IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERTA DRAHEIM,

                           Petitioner,                     OPINION AND ORDER

v.

                                                            21-cv-578-wmc
                                                             18-cr-58-wmc

UNITED STATES OF AMERICA,

                           Respondent.

---

Proceeding *pro se* under 28 U.S.C. § 2255, petitioner Roberta Draheim filed a motion to vacate her sentence imposed by this court. Having conducted a preliminary review of her motion under Rule 4 of the Rules Governing Section 2255 Cases, the court finds petitioner is plainly not entitled to relief for the reasons that follow. Accordingly, her motion will be denied and this action dismissed.

BACKGROUND[1]

On April 19, 2018, a grand jury returned an indictment charging Roberta Draheim and three other defendants with one count of conspiracy to distribute, and as to Draheim, all but one of her coconspirators and two other defendants with eight more counts of distribution of methamphetamine in various amounts. Draheim and one of her conspirators, Ryan Koenig, were further charged in the conspiracy count with distribution

---

[1] The court will refer to docket entries from the underlying criminal proceeding as "CR."

of 500 grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. § 841(a)(1).  Draheim was also charged in Count 6 of the indictment with possessing with intent to distribute methamphetamine in violation of § 841(a)(1), in Count 8 with possessing with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and in Count 9 with possessing with intent to distribute methamphetamine with one other codefendant, also in violation of §§ 841(a)(1) and 846.

On October 15, 2018, the government and Draheim filed a plea agreement in which she agreed to plead guilty to the conspiracy count of the indictment in exchange for the government's agreement to dismiss the other charges in the indictment and recommend that Draheim receive the maximum available reduction for acceptance of responsibility. (CR, dkt. #101.)  Among other things, the plea agreement specifically stated that the charge "carries mandatory minimum penalties of ten years in prison and a five-year period of supervised release." (*Id*.)  Moreover, before accepting Draheim's plea at hearing on October 23, 2018, the court questioned her extensively about the ramifications of her plea agreement, with particular emphasis on assuring her understanding that she "would be subject to mandatory minimum penalties of ten years in prison and a five-year period of supervised release and could be subject to maximum penalties of life in prison, a $10 million fine and a lifetime period of supervised release." (Plea Hrg. Tr. (dkt. #217) at 6.)

The court also took pains to assure Draheim's understanding as to how the federal sentencing guidelines could factor in her acceptance of responsibility, prior criminal record, and role in the offense. (*Id.* at 7.)  Draheim further acknowledged that while she understood the process for arriving at the appropriate guideline range, the court was not

bound to sentence her within that range, but rather could sentence her within the mandatory minimum of ten years and the maximum of life if it believed that sentence would better serve the purposes of sentencing. (*Id.*) After the court further confirmed her understanding of the rights that she was giving up by pleading guilty and of the basic terms of her plea agreement with the government, Draheim agreed that the government could prove specific facts to find her guilty beyond a reasonable doubt at trial as to the conspiracy count. Specifically, Draheim admitted that she conspired with Koenig and others to receive packages in Wisconsin containing methamphetamine coming from California between October 2016 and February 2018, or had similar packages shipped to others, and that in early 2017, she visited California to arrange shipment back to Wisconsin of an additional package of methamphetamine. (*Id.* at 19.) Finally, Draheim agreed that the combined weight of these packages exceeded 500 grams or more of a mixture containing methamphetamine. (*Id.* at 20-21.)

The guideline calculations in the Presentence Investigation Report ("PSR") prepared in advance of sentencing included a two-point enhancement for her role as an organizer, manager, or supervisor in the criminal conspiracy under U.S.S.G. § 3B1.1(c). With this enhancement, Draheim faced an advisory guideline range of 168 to 210 months' imprisonment. When Draheim's counsel later objected that she should be eligible for the two-level reduction under the "safety valve" set forth in U.S.S.G. § 5C1.2, the Probation Office disagreed in an addendum, arguing that Draheim's circumstances could not satisfy one of the five elements necessary for eligibility -- specifically, that she was (1) "not an organizer, leader, manager, or supervisor of others in the [conspiracy]" and (2) "not

3

engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act." In response, Draheim's counsel submitted an 18-page brief, arguing in detail why the court should interpret the relevant element of the safety valve statute, § 3553(f)(4), to mean that Draheim had to be *both* a leader *and* engaged in a continuing criminal enterprise to be deemed ineligible for the safety valve set forth in USSG § 5C1.2 and 18 U.S.C. § 3553(f). (Dkt. #160.)

On February 4, 2019, the court sentenced Draheim, ultimately agreeing with the Probation Office's recommendation that Draheim was not safety valve eligible. In its statement of reasons, the court specifically explained that to be eligible for the safety valve reduction, Draheim must satisfy *both* prongs of § 5C1.2(a)(4), one of which is the finding that Draheim was not an organizer, leader, manager or supervisor of others. The court then concluded,

> [s]ince there is no dispute that the defendant receives this role adjustment, she does not meet the criteria under § 5C1.2(a). The fact that she did not engage in a criminal enterprise is irrelevant. The defendant's objection is overruled. Even if sustained, however, it would have only a theoretical impact on the defendant's sentence here, since her guideline range would still be above the statutory minimum at 135 to 168 months, and the sheer number and size of the methamphetamine shipments that the defendant facilitated as a leader organizer in a relatively short period of time, the number of other defendants yet to be sentenced that this defendant helped drag down, and the number of old and new addicts who will continue to feel the impact of her actions make ten years a reasonable floor for sentencing, statutory or not.

(Statement of Reasons (dkt. #180) at 5.) Accordingly, the court agreed the probation office had properly calculated the advisory guideline imprisonment range of 168 to 210

4

months, which included a three-level downward adjustment for acceptance of responsibility. The court went even further, however, ultimately imposing a below-guidelines sentence of 130 months of imprisonment, only 10 months above the statutory minimum.

On direct appeal, Draheim challenged just the conclusion that she was not eligible for the two-level safety valve reduction in calculating her advisory guideline range, and the Court of Appeals for the Seventh Circuit affirmed this court's finding in *United States v. Draheim*, 958 F.3d 651 (7th Cir. 2020). In addressing Draheim's argument, the Seventh Circuit acknowledged that this circuit had not yet resolved the question about whether § 3553(f)(4) should be interpreted to disqualify a defendant only if she was *both* a leader/organizer *and* part of an ongoing criminal enterprise, or *either* a leader/organizer *or* part of an ongoing criminal enterprise. *Id.* at 657. The Seventh Circuit accepted the latter interpretation, adopting the reasoning from the Court of Appeals for the Sixth Circuit in *United States v. Bazel*, 80 F.3d 1140, 1143 (6th Cir. 1996).

In *Bazel,* the defendant had asserted that to find him ineligible for safety valve relief, the court would need to find it more likely than not that the defendant was *both* an organizer, leader, manager or supervisor *and* engaged in a continuing criminal enterprise. 80 F.3d at 1142. The Sixth Circuit rejected that interpretation, finding that the word "and" did not operate in its traditional sense in § 3553(f) and § 5C1.2 because the statute delineated "what the defendant must show *was not* true of him," as opposed to what the government had to prove about the defendant. *Id.* at 1143. In agreeing with this analysis, the Seventh Circuit further found this narrower interpretation of the availability of safety

5

valve relief was consistent with this circuit's precedent, the legislative history suggesting that the safety valve should be available to drug carriers without any significant leadership role, and the views of the Sentencing Commission itself. *Draheim*, 958 F.3d at 658.

Draheim did not file a petition for certiorari with the United States Supreme Court from the Seventh Circuit's ruling. Instead, on September 13, 2021, Draheim filed her pending motion to vacate her sentence in this court under § 2255.

OPINION

Generally speaking, a § 2255 motion cannot raise: (1) issues that were raised and decided on direct appeal, unless there is a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal, but were not; and (3) constitutional issues that were not raised on direct appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds by *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994)). However, an ineffective assistance of counsel claim may generally be brought in a § 2255 motion regardless of whether the claim was raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Since Draheim purports to challenge her conviction and sentence on the ground that her counsel was ineffective at the plea and sentence phases of the case, the court can take up the merit of her claim. Even so, Draheim does not begin to demonstrate entitlement to relief under the demanding standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, a petitioner must demonstrate *both* a constitutionally deficient performance by counsel *and* actual prejudice as a result of that deficiency. *See Williams v.*

*Taylor*, 529 U.S. 390, 390-91 (2000). To demonstrate deficient performance in the context of a defendant entering a guilty plea in particular, the petitioner must show that her lawyer's advice regarding the plea was objectively unreasonable. *Brock-Miller v. United States*, 887 F.3d 298, 308 (7th Cir. 2018) (citing *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003)). As for the prejudice prong in the context of a guilty plea, the petitioner must further show that there is a reasonable probability that *but for* counsel's deficient performance, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003).

With respect to sentencing, the petitioner must show that an attorney's error resulted in a longer sentence. *E.g.*, *Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015) (failure to object to error in the court's guidelines calculation constituted deficient performance). To satisfy the prejudice element, the petitioner must also show that there is a reasonable probability that she would have received a lighter sentence *but for* counsel's alleged errors. *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010).

Draheim asserts that her trial counsel was ineffective at the plea agreement phase because he failed to investigate the facts underlying the charges against her, and thus gave her poor advice. With respect to the sentencing phase, Draheim claims her trial attorney gave her false hope by maintaining her belief that the court would apply the safety valve to her sentence. To begin, she has *not* shown that her counsel performed deficiently. The record in this case *and* the court's own recollection of the proceedings is very much to the contrary. For example, there is nothing in this record to suggest that further investigation

by Draheim's counsel would have caused her counsel to learn facts suggesting that a plea agreement was not the most prudent path forward, and at the sentencing phase, her counsel conscientiously pursued the safety valve reduction, not just at sentencing but also on appeal. Nonetheless, Draheim represents that her counsel said that if she did not plead guilty, she might be subject to a life sentence, and if she accepted the government's offer, she would end up with "no more than 10 years," and if granted the safety valve, "it could go lower." (Pl. Br., dkt. #2, at 5.) Draheim further claims that she was neither aware of a possible enhancement under § 3B1.1, nor that she could be held accountable for the amount of narcotics distributed by her co-conspirators. Finally, Draheim states that she believed that a sentence below ten years was possible, insisting that her counsel gave her false hope with respect to the availability of the safety valve.

      All of these assertions are belied by Draheim's representations during the plea hearing itself. Most significantly, Draheim admitted that the government would be able to meets its burden of proof with respect to the conspiracy charge. As set forth above, the court also explained to Draheim that her role in the underlying conduct could be factored into her sentencing guidelines range, and in response, she acknowledged her role in the conspiracy could impact the guideline range she would face at sentencing. Finally, Draheim does not explain what was wrong with her counsel's advice about the potential for life sentence if all the facts of her involvement in this drug conspiracy were exposed at trial. Indeed, Draheim could well have been subject to a much lengthier sentence had she proceeded with a full airing of her crimes at trial and been convicted on all of the charges against her.

As for her attorney's purported confidence in the availability of safety valve relief, this may have reflected his honest assessment of the strength of his arguments, which is not at all the same as ineffective assistance. More importantly, Draheim has never suggested that her counsel ever *explicitly* guaranteed that she would receive the benefit of the safety valve. Again, to the contrary, the confidential exchange between Draheim and her counsel suggest an effort to be upbeat but never to mislead defendant about the possibility of an adverse ruling. (Dkt. #1-2, at 2-3.) Morever, the court's direct exchange with Draheim during the plea hearing disabused her of any such certainty, and confirmed that she has been given no assurances or promises as to her actual sentence, other than that it could range between 10 years and life. Nor did counsel perform deficiently in zealously advocating for safety valve relief before this court or on appeal. The issue had not yet been squarely resolved in this circuit, and the argument he raised was based on thorough legal research and norms of statutory construction. In short, her counsel's "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Vinyard v. United* States, 804 F.3d 1218, 1225 (7th Cir. 2015) (quoting *Strickland*, 466 U.S. at 690). That the Seventh Circuit ultimately did not adopt his statutory interpretation is hardly a basis to find deficient performance. Accordingly, Draheim's ineffective assistance of counsel claim fails at the first level of performance.

Equally fatal to Draheim's petition is her complete failure to raise a plausible argument as to how these perceived deficiencies prejudiced her in any way. Said differently, Draheim has not shown a reasonable probability that, but for her attorney's

9

deficient performance, she would not have pleaded guilty, much less received a lighter sentence. Rather, beyond the bald assertion that she would not have accepted the government's offer if her counsel had investigated the facts underlying the charges and not been so confident in the safety valve possibility, Draheim has not even begun to explain how the government would *not* have met its burden of proof at trial with respect to Count 1, much less Counts 6, 8 and 9, nor how she could conceivably think this court would have given her a sentence lower than a mere 10 months above the mandatory minimum after her indisputable central role in this large meth conspiracy were paraded in all its sordid detail at trial. Indeed, in the face of her sworn statements during the plea hearing, admitting that she conspired with Koenig and others to receive and transport packages containing a great deal more than 500 grams of methamphetamine into Wisconsin between 2016 and 2018, the probability that she would have foolishly declined the plea agreement and taken her chances at trial, on all three of the other charges against her, is quite small indeed, if not laughable. *See United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."). Therefore, the court sees no basis to infer that Draheim's conviction or sentence suffers from a constitutional defect, and this motion will be denied.

Under Rule 11 of the Rules Governing Section 2254 Cases (which can be applied to cases under § 2255), the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. The question is whether "reasonable jurists

could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Because Draheim has not made a substantial showing of a denial of a constitutional right, no certificate will issue.

## ORDER

IT IS ORDERED that:

(1) Roberta Draheim's motion to vacate pursuant to 28 U.S.C. § 2255 (dkt. #1) is DENIED and her petition is DISMISSED.

(2) A certificate of appealability will not issue.

Entered this 23rd day of November, 2021.

                                               BY THE COURT:
                                               /s/
                                               WILLIAM M. CONLEY
                                               District Judge